IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSH WATSON ) | |
| ) | No. 22 C 4106 |
| Plaintiff, ) | |
| ) | |
| vs. ) | JURY DEMAND |
| ) | |
| THE VILLAGE OF LYNWOOD, a unit of ) | |
| local government and JADA CURRY, in ) | |
| her individual capacity. ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff Josh Watson (Plaintiff), through his attorneys, KULWIN, MASCIOPINTO & KULWIN, L.L.P., states his complaint against defendants the Village of Lynwood, a unit of local government and Mayor Jada Curry in her individual capacity (collectively referred to as "Defendants").

## Introduction

1. Plaintiff brings this action to redress acts of unlawful employment retaliation in violation of the First Amendment to the United States Constitution guaranteed under 42 U.S.C. § 1983, the Illinois Whistleblower's Act, 740 ILCS 174/1, and the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601.

2. Specifically, as alleged further below, Defendants discharged Plaintiff for unlawful retaliatory reasons with the knowledge, approval and acquiescence of the Village of Lynwood and its high-ranking municipal officials.

1

## Jurisdiction and Venue

3. The Court has jurisdiction over Counts I, III and IV under 28 U.S.C. §§ 1331, 1332 and 1343. The Court has jurisdiction over Counts II and V under 28 U.S.C. §§ 1332 and 1367(a).

4. The amount in controversy in this case exceed $75,000 and the parties are citizens of different States.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims occurred within this district.

## The Parties

6. Plaintiff Josh Watson (Plaintiff) is a citizen of the State of Indiana. Plaintiff worked for the Village of Lynwood within this judicial district.

7. Defendant Jada Curry (Curry) is a citizen of the State of Illinois. Curry is sued in her individual capacity.

8. During the relevant time period, Curry was the elected Mayor of the Village of Lynwood. As a result, Curry acted under color of law and had final policymaking authority and/or was delegated with final policymaking authority for the Village of Lynwood.

9. During the relevant time period, Curry was acting within the scope of her employment.

10. Defendant Village of Lynwood (Lynwood) is a municipality located in the State of Illinois and incorporated under the laws of the State of Illinois.

11. Lynwood is sued as Plaintiff's employer, as indemnitor under 745 ILCS 10/9-102 and for injunctive and equitable relief.

12. During the relevant time period, Defendants were acting pursuant to a policy, custom and/or practice of unlawful employment retaliation.

**Facts Common to All Claims**

13. In 2013, Plaintiff began working full-time for Lynwood.

14. While working for Lynwood, Plaintiff was responsible for project management and was the main point of contact for external vendors.

15. At all times, Plaintiff was highly qualified and experienced to fill his job responsibilities.

16. At all times, Plaintiff met or exceeded Lynwood's legitimate employment expectations.

17. The Criminal Identification Act, 20 ILCS 2630/0.01 *et seq.*, names the ISP as the central repository criminal history records information, including its collection, maintenance and dissemination.

18. The ISP gathers and maintains this information into a system called the Law Enforcement Data System ("LEADS"). *See* 20 Ill. Admin. Code § 1240.10.

19. Under state law, the Director of the State Police is responsible for establishing policy, procedures, and regulations consistent with State and federal rules, policies, and law by which LEADS operates.

20. Under federal and state law, LEADS is to be used only by criminal justice agencies for criminal justice purposes. *See* 20 Ill. Admin. Code § 1240.80(a) .

3

21. State and federal law protect access to LEADS information. For example, misuse of LEADS could constitute state and federal offenses. *See, e.g.*, 28 C.F.R. § 20.33 (using criminal history record information other than for criminal justice purposes would be considered a misuse of the system); 720 ILCS 5/33–3 (a public officer commits misconduct when he performs an act in excess of his lawful authority to obtain a personal advantage for himself or another).

22. Lynwood has access to LEADS.

23. On or about January 20, 2022, Plaintiff received credible information that Curry caused a violation of a federal or State law, rule or regulation by improperly requesting and obtaining information from LEADS.

24. Specifically, Plaintiff received credible information that Curry directed a co-worker to run, via LEADS 3.0, a full background check on a Lynwood resident who applied for a permit for a liquor license.

25. Further, Plaintiff received credible information that Curry compelled the co-worker to provide the LEADS information even after Curry was specifically informed that her request for LEADS information violated the laws, rules and regulations governing access to LEADS.

26. Plaintiff had reasonable cause to believe that Curry violated a federal or State law, rule or regulation.

27. For example, under applicable State laws, rules and regulations, Curry was not authorized to receive LEADS data.

28. Specifically, Lynwood is required to "comply with the LEADS access security standards." *See* 20 Ill. Adm. Code 1240.50(a)

29. Section 1240.80 regulates the dissemination of data obtained through LEADS and provides: "(a) The LEADS network and LEADS data shall not be used for personal purposes[;] (b) Personal or unofficial messages shall not be transmitted[;] c) LEADS data shall not be sold[;] [and] (d) LEADS data shall not be disseminated to any individual or organization that is not legally authorized to have access to the information." 20 Ill. Adm. Code 1240.80(a)-(d).

30. Additionally, "LEADS operators shall use the terminal only for those purposes for which they are authorized" and they "must ensure the person requesting the information is authorized to receive the data." 20 Ill. Adm .Code 1240.50(b)(4).

31. The LEADS Security Policy, implemented by the Director of the State Police, Section 4.2.1 specifically states that "It is a violation of both state and federal law for information obtained through LEADS . . . to be used for licensing (such as day care centers, liquor license, taxi cab drivers, etc.) or noncriminal justice employment (such as fire departments, villages, towns, etc.)."

32. For these and other reasons, Plaintiff reasonably believed Curry was not authorized to receive LEADS information and her purpose for obtaining LEADS information was prohibited.

33. As alleged further below, in January 2022, Plaintiff took a leave of absence under the FMLA.

34. On February 25, 2022, Plaintiff reported to the State Police he reasonably believed Curry committed, caused and/or directed others to commit LEADS violations and, specifically, the violation of a federal or State law, rule or regulation.

35. Upon information and belief, Defendants knew and/or suspected that Plaintiff reported LEADS violations to the State Police.

36. On March 23, 2022, before he returned from FMLA leave, Plaintiff was informed he should report to Curry's office on March 25, 2022 for a meeting.

37. On March 25, 2022, Plaintiff arrived at Curry's office for the meeting. The meeting was also attended by high-ranking Lynwood police officers.

38. During the meeting, Plaintiff was told "We were contacted by the Illinois Leads, by a Tammy Hutchinson, on February 25th about a violation that was reported. Do you know anything about it?" Plaintiff said, "Yes, I reported it."

39. Plaintiff was told it was not his job to report LEADS violations.

40. Curry then proceeded to dispute that her request for LEADS information in considering a liquor license permit application was prohibited.

41. Specifically, Curry stated, "So you don't think the Mayor is entitled to have a background check done on someone open in business in town?" In response, Plaintiff explained his understanding of LEADS requirements which prohibited Curry's request. Curry claimed her argument would win in court.

6

42. Curry then stated that, while Plaintiff was on FMLA leave, there were "no issues within the Village" so she was "unsure" as to what work Plaintiff did during an eight-hour day. Curry claimed Plaintiff allegedly "did not do anything" to help the Village so "they are getting rid" of his position.

43. Curry offered Plaintiff a severance agreement "as a thank you for almost ten years of hard work" if he resigned effective immediately and waived his legal rights.

44. When Plaintiff refused to sign the severance agreement, Curry stated Plaintiff was being discharged effective immediately.

45. Defendants had no legitimate reason for discharging Plaintiff.

## COUNT I
### Section 1983 First Amendment Retaliation
### (All Defendants)

46. Plaintiff re-alleges the paragraphs above.

47. The First Amendment protects free speech.

48. In or around February, 2022, Plaintiff engaged in First Amendment-protected activity.

49. For example, Plaintiff engaged in First Amendment-protected activity by reporting to the State Police he reasonably believed Defendant Curry committed, caused and/or directed others to commit the violation of law, rule or regulation and the LEADS Security Policy.

50. Further, Plaintiff engaged in First Amendment-protected activity by reporting Defendants' conduct with respect to his request for FMLA leave to the Wage and Hour Division of the U.S. Department of Labor as alleged in ¶¶ 89-102.

51. Plaintiff exercised his First Amendment rights by speaking out about Defendants' conduct to the State Police and the Department of Labor.

52. Plaintiff's First Amendment activity did not adversely affect the efficient administration of public service and was not an essential function of his job duties or responsibilities.

53. Defendants unlawfully retaliated against Plaintiff for the exercise of his First Amendment rights.

54. For example, Defendants discharged Plaintiff on March 25, 2022.

55. Based upon the foregoing facts, as well as others, Plaintiff was discharged in retaliation for the exercise of his First Amendment rights.

56. Based upon the foregoing facts, as well as others, Defendants' reasons for discharging Plaintiff were pretextual and, in fact, Plaintiff was discharged in retaliation for the exercise of his First Amendment rights.

57. Defendants intentionally subjected Plaintiff to unequal and retaliatory treatment by discharging him for exercising his First Amendment rights.

58. Defendants' actions reflect a policy, custom, or pattern of official conduct of engaging in and condoning retaliation against individuals based in violation of the First Amendment.

59. Defendants' actions violated Plaintiff's rights guaranteed under the First Amendment and secured under 42 U.S.C. § 1983.

60. Defendants' actions were intentional, willful, and malicious and/or in reckless disregard of Plaintiff's rights guaranteed under the First Amendment and secured under 42 U.S.C. § 1983.

61. Defendants' actions caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

WHEREFORE, Plaintiff seeks the following relief as to Count I:

A. All wages and benefits Plaintiff would have received but for the retaliation, including but not limited to back pay, front pay, future pecuniary losses, and pre-judgment interest;

B. Compensatory damages in an amount to be determined at trial;

C. A permanent injunction enjoining the Defendants from engaging in the retaliatory practices complained of herein;

D. A permanent injunction requiring that the Defendants adopt employment practices and policies in accord and conformity with the requirements of 42 U.S.C. § 1983, and further requiring that Defendants adopt and initiate effective remedial actions to ensure equal treatment and non-retaliation of employees;

E. The Court retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F. Punitive damages as allowed by law as against the individual defendant Jada Curry;

G. Reasonable attorneys' fees, costs, and litigation expenses; and

H. Such other relief as the Court may deem just or equitable.

9

## COUNT II
### Violation of the Illinois Whistleblower's Act
### (Defendant Village of Lynwood)

62. Plaintiff re-alleges the paragraphs above.

63. Section 15 of the Whistleblower Act (740 ILCS 174/15) provides that an employer may not retaliate against an employee for "disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b).

64. Plaintiff disclosed information to a government or law enforcement agency, including the State Police and the Department of Labor as alleged in this complaint, with reasonable cause to believe that the information disclosed violations of a State or federal law, rule or regulation.

65. Defendants discharged Plaintiff on March 25, 2022.

66. Based upon the foregoing facts, as well as others, Plaintiff was discharged in retaliation for disclosing to a government or law enforcement agency that he had reasonable cause to believe Defendants violated a State or federal law, rule, or regulation.

67. Based upon these facts, as well as others, Defendants' reasons for terminating Plaintiff were pretextual. In fact, Plaintiff was discharged in retaliation for disclosing to a government or law enforcement agency he had reasonable cause to believe Defendants violated a State or federal law, rule, or regulation.

68. Plaintiff's termination was without good cause, and was malicious, willful and oppressive and in direct violation of clearly mandated public policy.

69. As a result of Defendant's conduct, Plaintiff suffered actual damages of a personal and pecuniary nature which are continuing to accrue at this time which cannot be calculated with precision, but, in any event, exceed $100,000.00.

70. Pursuant to 740 ILCS 174/30, Plaintiff seeks an award of all relief permitted necessary to make Plaintiff whole, including but not limited to the following, as appropriate: (1) reinstatement with the same seniority status that the employee would have had, but for the violation; (2) back pay, with interest; and (3) compensation for any damages sustained as a result of the violation, including litigation costs, expert witness fees, and reasonable attorney's fees.

WHEREFORE, Plaintiff seeks the following relief as to Count II:

A. All wages and benefits Plaintiff would have received but for the retaliation, including but not limited to back pay, front pay, future pecuniary losses, and pre-judgment interest;

B. Compensatory damages in an amount to be determined at trial to the extent provided by law;

C. A permanent injunction enjoining the Defendants from engaging in the retaliatory practices complained of herein;

D. The Court retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

E. Reasonable attorneys' fees, costs, and litigation expenses; and

F. Such other relief as the Court may deem just or equitable.

11

## COUNT III
## FMLA Interference
## (Defendant Village of Lynwood)

71. Plaintiff re-alleges the paragraphs above.

72. The FMLA entitles eligible employees of covered employers to take unpaid, job-protected leave for specified family and medical reasons under the same terms and conditions as if the employee had not taken leave.

73. Under the FMLA, it is illegal for an employer to interfere with an employee's attempt to exercise any FMLA rights.

74. During the relevant time period, Plaintiff was eligible for FMLA benefits and protection.

75. Plaintiff worked for Lynwood for approximately eight years and worked over 1250 hours in the year prior to his need for FMLA leave.

76. Plaintiff worked at a location with over 50 employees within 75 miles.

77. Lynwood is covered by the FMLA as the government of the political subdivision of a state.

78. Lynwood has over 100 employees in 20 or more workweeks of the calendar year.

79. Plaintiff had a serious health condition which rendered him unable to perform his job for a period of time and, as a result, he was entitled to FMLA leave.

80. Specifically, Plaintiff was scheduled for a planned medical procedure in February 2022 that required time for recovery when he would be unable to perform his job for approximately two months.

81. Plaintiff provided sufficient notice to Lynwood of his need for and/or intent to take FMLA leave.

82. For example, in December 2021, Plaintiff first provided Lynwood with information regarding his need for medical leave due to a serious health condition which rendered him unable to perform his job for a period of time.

83. However, Lynwood did not notify Plaintiff of his eligibility to take FMLA leave within five days of acquiring knowledge that Plaintiff's leave may be for an FMLA qualifying reason as required by federal law.

84. In January 2022, Plaintiff applied for a protected leave of absence under the FMLA due to a serious health condition which rendered him unable to perform his job for a period of time.

85. As alleged herein, Lynwood unlawfully interfered with Plaintiff's FMLA rights, among other ways, by terminating him before he returned to work from his FMLA-protected leave of absence and by preventing him from exercising his right to return to his former position.

86. Further, Lynwood also unlawfully interfered with Plaintiff's FMLA rights, among other ways, by terminating him before he returned to work from his FMLA-protected leave of absence and preventing him from exercising his right to return to any other position he was qualified to fill.

87. Lynwood's actions were intentional, willful, and malicious and/or in reckless disregard of Plaintiff's rights.

88. Lynwood's conduct caused Plaintiff lost wages and benefits, future pecuniary losses, and other actual damages.

WHEREFORE, Plaintiff seeks the following relief on Count III:

A. All wages and benefits Plaintiff would have received but for the unlawful interference including, but not limited to, back pay, front pay, future actual losses and pre-judgment interest;

B. Liquidated damages;

C. A permanent injunction enjoining defendants from engaging in the practices complained of herein;

D. A permanent injunction requiring that defendants adopt employment practices and policies in accord and conformity with the requirements of the FMLA and further requiring that Defendants adopt and initiate effective remedial actions to ensure employees are not subject to FMLA interference.

E. The Court retain jurisdiction of this case until such time as it is assured that the defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F. Reasonable attorneys' fees, costs, and litigation expenses; and

G. Such other relief as the Court may deem just or equitable.

## COUNT IV
## FMLA Retaliation
## (Defendant Village of Lynwood)

89. Plaintiff re-alleges the paragraphs above.

90. Under the FMLA, it is illegal for an employer to retaliate against employees for exercising any FMLA rights.

91. Lynwood's response to Plaintiff's need for a leave of absence violated the FMLA.

14

92. For example, in violation of the FMLA, Lynwood did not notify Plaintiff of his eligibility to take FMLA within five days of acquiring knowledge that Plaintiff's leave may be for an FMLA qualifying reason.

93. As another example, in violation of the FMLA, Plaintiff was informed he had only three days to return the FMLA paperwork.

94. Nevertheless, in January 2022, Plaintiff returned the paperwork and was placed on FMLA leave.

95. Plaintiff reported Lynwood's misconduct in handling employee FMLA claims to the Wage and Hour Division of the United States Department of Labor.

96. Upon information and belief, Defendants knew and/or suspected that Plaintiff reported violations to the Wage and Hour Division.

97. On March 16, 2022, Lynwood participated in a conference with the Wage and Hour Investigator.

98. During the meeting, Lynwood was informed it was cited for violations arising from Plaintiff's report and relating to Plaintiff's FMLA leave.

99. Plaintiff engaged in protected activity under the FMLA by taking FMLA leave and reporting violations to the Department of Labor.

100. Defendants retaliated against Plaintiff for engaging in protected activity under the FMLA, as alleged herein.

101. Lynwood's actions were intentional, willful, and malicious and/or in reckless disregard of Plaintiff's rights.

15

102. Lynwood's conduct caused Plaintiff lost wages and benefits, future pecuniary losses, and other actual damages.

WHEREFORE, Plaintiff seeks the following relief on Count IV:

A. All wages and benefits Plaintiff would have received but for the unlawful interference including, but not limited to, back pay, front pay, future actual losses and pre-judgment interest;

B. Liquidated damages;

C. A permanent injunction enjoining defendants from engaging in the practices complained of herein;

D. A permanent injunction requiring that defendants adopt employment practices and policies in accord and conformity with the requirements of the FMLA and further requiring that Defendants adopt and initiate effective remedial actions to ensure employees are not subject to FMLA interference.

E. The Court retain jurisdiction of this case until such time as it is assured that the defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F. Reasonable attorneys' fees, costs, and litigation expenses; and

G. Such other relief as the Court may deem just or equitable.

## COUNT V
### Indemnification
### (Defendant Village of Lynwood)

103. Plaintiff re-alleges the paragraphs above.

104. Pursuant to 745 ILCS 10/9-102, Lynwood is empowered and directed to pay any judgment for compensatory damages (and any associated attorney fees and costs) for which an independently elected official, including Curry, acting within the scope of her employment, is found liable.

105. Curry's acts and/or omissions was committed within the scope of her employment with Lynwood.

106. In the event that a judgment for compensatory damages is entered against Curry, Lynwood must pay the judgment as well as the associated attorney fees and costs.

## PLAINTIFF DEMANDS A TRIAL BY JURY

    Respectfully submitted,

    KULWIN, MASCIOPINTO & KULWIN, LLP

    By: s/ Jeffrey R. Kulwin
        Attorney for Plaintiff

Jeffrey R. Kulwin
KULWIN, MASCIOPINTO & KULWIN, L.L.P.
161 North Clark Street, Suite 2500
Chicago, Illinois 60601
T: 312-641-0300
E: jkulwin@kmklawllp.com