**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| JOSH WATSON<br><br>Plaintiff,<br><br>vs.<br><br>THE VILLAGE OF LYNWOOD, a unit of local government and JADA CURRY, in her individual capacity.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 22 C 4106<br><br>JURY DEMAND<br><br>Honorable Jeremy C. Daniel |

**DEFENDANTS' MOTION FOR JUDGEMENT AS A MATTER OF LAW ON COUNT I – FIRST AMENDMENT RETALIATION**

Defendants, the Village of Lynwood and Jada Curry, move for judgment as a matter of law on Count I of Plaintiff's Complaint and Plaintiff's request for punitive damages pursuant to Federal Rule of Civil Procedure 50(a) and state as follows:

**LEGAL STANDARD**

"If, reviewing that evidence in the proper light, the nonmoving party did not introduce enough to support her claim, then judgment as a matter of law is correct." *Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 924 (7th Cir. 2000) (affirming trial court's grant of judgment as a matter of law under Fed R. Civ. Pro. 50(a)). "The standard for granting judgment as a matter of law 'mirrors' the standard for granting summary judgment." *Pandya v. Edward Hosp.*, 1 F. App'x 543, 545 (7th Cir. 2001) (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097, 2109 (2000)). Rule 50(a) provides:

> **(1)** ***In General.*** If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> **(A)** resolve the issue against the party; and

> **(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>
> **(2)** ***Motion.*** A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

## ARGUMENT

### I. Defendants are entitled to judgment as a matter of law on Count I because Plaintiff's speech was not protected.

In Count I, Plaintiff contends that the Defendants retaliated against him in violation of his First Amendment Rights when it terminated his employment. Supporting this claim is Plaintiff's contention that he engaged in protected speech when he (a) reported to the Illinois State Police his belief that Defendant Curry improperly obtained LEADS information and (b) reported to the U.S. Department of Labor his belief that the Village had mishandled his FMLA medical leave. Neither report constitutes protected speech as a matter of law, and Defendants are therefore entitled to judgment as a matter of law.

To establish a prima facie case of unlawful First Amendment retaliation, a public employee must establish that: (1) he engaged in constitutionally protected speech; (2) he suffered a deprivation likely to deter her from exercising her First Amendment rights; and (3) his speech was a motivating factor in her employer's adverse action. *Valentino v. Village of South Chicago Heights,* 575 F.3d 664, 670 (7th Cir. 2009).

For a public employee's speech to be protected, the employee must establish that she spoke as a citizen on a matter of public concern. *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006). When a public employee sues a government employer under the First Amendment's Speech Clause, the employee must show that he or she spoke as a citizen on a matter of public concern. *Connick v. Myers,* 461 U.S. 138, 147 (1983). If an employee does not speak as a citizen, or does not address

a matter of public concern, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* The determination of whether speech is constitutionally protected is a question of law. *Houskins v. Sheahan,* 549 F.3d 480, 489 (7th Cir. 2008). Here, both predicate acts fail to meet the legal standard of protected speech.

A. Plaintiff did not speak as a private citizen when he made his report to the Illinois State Police.

"[P]ublic employees have no cause of action for First Amendment retaliation unless they were disciplined for speaking *as citizens* about a matter of public concern." *Spiegla v. Hull*, 481 F.3d 961, 963 (7th Cir. 2007) (citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006)). "When public employees make statements pursuant to their official duties, they are not speaking as citizens and the Constitution does not insulate their communications from employer discipline." *Id*. at 964 (citations and quotations omitted). Thus, in a first amendment retaliation claim, the "threshold inquiry is whether the employee was speaking as a citizen; only then [does the court] inquire into the content of the speech." *Id*. at 965.

In *Garcetti,* a deputy district attorney, filed a §1983 complaint against the county and supervisors at the district attorneys' office claiming they violated the First and Fourteenth Amendments by retaliating against him for engaging in free speech. *Id.* at p. 415.

Plaintiff wrote a disposition memorandum recommending dismissal of a case on the basis of purported governmental misconduct. *Id.* at p. 414-415. Plaintiff claimed that he was subject to adverse employment actions in retaliation for engaging in protected speech, i.e. writing the memorandum. *Id.* at p. 415. Specifically, plaintiff claimed that he was subjected to reassignment, a transfer to a different courthouse, and denial of a promotion. *Id.* Defendants denied those claims

and argued all of the actions plaintiff complained of were explained by legitimate reasons, such as staffing needs. *Id.*

The United States District Court for the Central District of California granted defendants' motion for summary judgment and plaintiff appealed. *Id.* The Court of Appeals for the Ninth Circuit reversed and held that plaintiff's allegations of wrongdoing in the memorandum constituted protected speech under the First Amendment. *Id.* The Supreme Court of the United States reversed the Ninth Circuit. *Id.* at p. 417.

The U.S. Supreme Court held that plaintiff's expressions contained in the memorandum were made pursuant to his duties as a deputy prosecutor. *Id.* at p. 421. The Court further held that "the fact that Ceballos spoke as a prosecutor in fulfilling a responsibility to advise his supervisor about how to best proceed with a pending case distinguishes Ceballos' case from those in which the First Amendment provides protection against discipline." *Id.* The Court determined that

> "Ceballos did not act as a citizen when he went about conducting his daily professional activities, such as supervising attorneys, investigating charges, and preparing filings. In the same way he did not speak as a citizen by writing a memo that addressed the proper disposition of a pending criminal case. When he went to work and performed the tasks he was paid to perform, Ceballos acted as a government employee. The fact that his duties sometimes required him to speak or write does not mean his supervisors were prohibited from evaluating his performance." *Id.* at 422.

Accordingly, the Court determined that plaintiff's speech did not fall within the First Amendment protection. *Id.*

In *Spiegla*, a correctional officer made a written report and informed a supervisor about a breach of prison security protocol pertaining to the searching of employee and visitor vehicles for contraband. *Id*. at 962-63. Four days later, the officer was reassigned to a worse shift. *Id*. at 963. The officer then sued, asserting a first amendment retaliation claim. *Id*. Pursuant to the analysis in *Garcetti*, the 7th Circuit directed the District Court to enter judgment in favor of the Defendants.

*Id*. at 966, 967. Specifically, the court reasoned that the plaintiff reported the incident to her supervisor "pursuant to her responsibility as a correctional officer to inform her superiors of a possible breach in prison search policy, especially one involving two senior prison officers." *Id*. at 966. "In doing so she spoke as an employee, not a citizen, because ensuring compliance with prison security policy was part of what she was employed to do." *Id*. The court reached this conclusion even though it determined that making a report of this nature was not one of her core functions. *Id*. The court reasoned that *Garcetti* does not require a job responsibility to be "core." *Id*. Rather, *Garcetti* asks "only whether an employee's expressions [were] made pursuant to official responsibilities." *Id*. (citations and quotations omitted).

Here, the evidence introduced at trial demonstrates that Mr. Watson's report to the Illinois State Police was made pursuant to his official responsibilities. Specifically, the following facts were introduced at trial:

- Plaintiff was the administrator of the "Spillman" system – i.e. the police department's records system.
- To access Spillman, and to act as the Spillman administrator, Plaintiff was required to be LEADS certified.
- Plaintiff was LEADS certified.
- Plaintiff was familiar with the LEADS security policy.
- Plaintiff had to be LEADS certified to perform his IT responsibilities pertaining to, *inter alia*, the LEADS and Spillman systems.
- Plaintiff was responsible for setting user access permissions for Village employees with respect to the LEADS database.
- Plaintiff was responsible for ensuring that only authorized users had access to the LEADS database.
- Plaintiff believed that Mayor Curry improperly accessed a LEADS background check.
- Plaintiff learned about Mayor Curry requesting and receiving a LEADS background check during his employment and before he went on FMLA leave.

- Plaintiff believed that Mayor Curry's conduct violated the LEADS security policy
- Plaintiff reported this purported unauthorized access to the Illinois State Police.
- Plaintiff continued to receive and respond to work questions while he was on FMLA in the days immediately prior to contacting the Illinois State Police.

This uncontested and unrebutted evidence establishes that Plaintiff had job responsibilities which were explicitly related to managing who at the Village had access to the LEADS database. The report to the State Police pertained to that duty as he reported the unauthorized access which he believed violated the LEADS Security Policy. The report to the Illinois State Police was made pursuant to his official job responsibilities relating to the management of user access to LEADS. As a result, Plaintiff did not speak as a citizen when he made this report. Defendants are thus entitled to judgment as a matter of law.

B. <u>Plaintiff did not speak on a matter of public concern when he made his report to the Department of Labor.</u>

In assessing whether speech pertains to a matter of public concern, courts keep in mind that individual disputes or grievances, although they certainly qualify as "speech" are not constitutionally protected because they are deemed "too remote from the [First Amendment's] central purpose of protecting the public marketplace in ideas and opinions" to warrant judicial interference with the public employer's personnel decisions. *Campbell v. Towse,* 99 F.3d 820, 827 (7th Cir. 1996) *citing Eberhardt v. O'Malley,* 17 F.3d 1023, 1026 (7th Cir. 1994).

Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement. *Connick v. Myers,* 461 U.S. 138, 147-148 (1983). The *Connick* test requires the Court to look at the overall objective or point of the speech as ascertained by those three factors. *Kristofek v. Village of Orland Hills*, 712 F. 3d 979, 985 (7th Cir. 2013). Of the three factors, content is the most important. *Bivens v. Trent,* 591 F.3d 555, 560-561 (7th Cir. 2010). When analyzing the content of the speech, the broad subject matter is not

determinative of whether it is protective and, instead, the Court must focus on the particular content of the speech. *Kubiak v. City of Chicago,* 810 F.3d 476, 483 (7th Cir. 2016) *citing Bivens,* 591 F.3d at 560-561.

The fact that an employee's speech may touch on an issue of public import does not automatically render her remarks on the subject protected. *Bivens,* 591 F.3d at 560-561 *citing Cliff v. Bd. of Sch. Comm'rs of City of Indianapolis,* 42 F.3d 403, 410 (7th Cir. 1994). Rather, the motive of the speaker is a relevant, though not dispositive, factor because speech will not be deemed protected if the only point of the speech was to further some purely private interest. *Kokkins v. Ivkovich,* 185 F.3d 840, 844 (7th Cir. 1999). If the speech concerns a subject of public interest but the *expression* addresses only the personal effect upon the employee, then as a matter of law the speech is not of public concern. *Marshall v. Porter County Plan Comm'n,* 32 F.3d 1215, 1219 (7th Cir. 1994). The *Connick* test requires the Court to evaluate the point of the speech in question. *Callaway v. Hafeman,* 832 F.2d 414, 417 (7th Cir. 1987) (Finding employee report of sexual harassment was not a matter of public concern.)

There is no evidence that Plaintiff was speaking on a matter of public concern when he made the report to the Department of Labor. To the contrary, the unrebutted evidence, including Plaintiff's own admissions, demonstrates that he filed the Complaint in pursuit of a personal grievance regarding his own medical leave. Plaintiff testified that he filed the complaint because the Village told him to return the paperwork in 3 days instead of the mandatory 15 days. He further admitted that he filed the Complaint after speaking with his healthcare provider who informed him that the Village was violating his rights under the FMLA by requiring him to return the paperwork so quickly. In other words, he filed the Complaint because he was concerned about his own

personal right and ability to obtain FMLA. The Complaint pertained to a purely private interest and does not constitute protected speech. Defendants are entitled to judgment as a matter of law.

## II. Defendants are entitled to judgment as a matter of law on Plaintiff's request for punitive damages.

Punitive damages are designed "to punish the defendant for reprehensible conduct and to deter him and other from engaging in similar conduct." *Kemezy v. Peters*, 79 F. 3d 33, 34 (7th Cir. 1996). Such damages are permissible in §1983 actions where the plaintiff demonstrates that defendants displayed "reckless or callous disregard for the plaintiff's rights or an intentional violation of federal law". *Smith v. Wade,* 461 U.S. 30, 51 (1983). In order to award punitive damages against a defendant, the jury must first be presented with evidence that the defendant acted with "malice or reckless indifference" towards the plaintiff. *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 538-540 (1999). There is a "positive element of conscious wrongdoing" that is required which must demonstrate that the individual was aware that his action was in violation of federal law. *Id.* at 535-538.

Plaintiff cannot show that Defendant Curry acted with "malice or reckless indifference" or conscious wrongdoing. "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad* at 535. The Supreme Court has held that while it may be unnecessary to show actual malice, it does require a "subject consciousness" of injury or illegality and a "criminal indifference to civil obligations." *Id* at 536 (citations omitted). This is a high standard and "[t]here will be circumstances where intentional discrimination does not give rise to punitive damages liability under this standard." *Id.* This even includes a situation where "the employer discriminates with the distinct belief that its discrimination is lawful." *Id.* Whether a defendant is eligible for punitive damages should be characterized in terms of that defendant's motive or intent. "The

justification of exemplary damages lies in the evil intent of the defendant." *Id.* at 538 (citations and quotations omitted).

Plaintiff has not introduce any evidence which demonstrates that Mayor Curry had a subject consciousness of injury or illegality or reckless indifference to her civil obligations.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court (a) grant them judgment as a matter of law on Count I of Plaintiff's Complaint or, (b) in the alternative, grant them judgment as a matter of law on Plaintiff's request for punitive damages, and (c) grant such other relief as it deems just and fair.

Respectfully submitted,

THE VILLAGE OF LYNWOOD and JADA CURRY

By: /s/ Eric B. Bernard
One of Their Attorneys

Jennifer K. Schwendener
Eric B. Bernard
PETRARCA, GLEASON,
BOYLE & IZZO, LLC
5100 Main St., Ste. 201
Downers Grove, IL 60515
630-796-2086
jschwendener@petrarcagleason.com
ebernard@petrarcagleason.com